IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CITY OF LINCOLN V. DIAL REALTY DEVELOPMENT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT,

V.

DIAL REALTY DEVELOPMENT, A NEBRASKA CORPORATION, ET AL., APPELLEES.

Filed September 29, 2015.    No. A-14-1138.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

Jeffrey R. Kirkpatrick, Lincoln City Attorney, and Timothy S. Sieh for appellant.

David L. Welch and Kellie Chesire Olson, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellee Dial Realty Development.

Robert S. Keith, of Engles, Ketcham, Olson & Keith, P.C., for appellee Hawkins Construction Company.

Stephen L. Ahl and Nathan D. Anderson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellees Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America.

IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

The City of Lincoln (City) brought this declaratory judgment action against Dial Realty Development (Dial), Hawkins Construction Company (Hawkins), Charter Oak Fire Insurance Company (Charter Oak), Travelers Property Casualty Company of America (Travelers), and Zurich American Insurance Company (Zurich). Each defendant moved for summary judgment and

- 1 -

all of the motions were granted. The City appeals the entry of summary judgment in favor of Dial and Hawkins. We find no merit to the City's arguments on appeal and therefore affirm.

BACKGROUND

The factual basis underlying this action relates to a construction project and is undisputed. Dial is a real estate development company. Dial is not a contractor and does not do any construction, paving, or installation on a project. At all relevant times, Dial was insured under two policies: a general liability policy issued by Charter Oak and an umbrella policy from Travelers. Hawkins is a corporation engaged in the construction business. At all relevant times, Hawkins was insured under a commercial general liability policy issued by Zurich.

On January 31, 2007, under Executive Order No. 78340, the City approved Dial's request "to construct Paving of Amaranth Lane . . ." The executive order defined Dial as the project's "Permittee" and noted that Dial, as Permittee, would have the work completed by its own "Contractor." Dial executed an unqualified written acceptance of the terms of the executive order.

The executive order incorporated by reference the "2006 City of Lincoln Standard Specifications for Municipal Construction with the 2006 Supplemental Specifications" (Standard Specifications) and the "General Conditions and General Specifications Applying to Private Construction of Public Facilities" (General Conditions). It further provided that Dial, as "Permittee shall comply with the same, including the filing with the City Engineer of the Certificate of Insurance and the executed Performance and Labor and Material Payment Bonds required thereby."

The General Conditions incorporate the "Insurance Requirements for All City Contracts" (Insurance Requirements). The City's Insurance Requirements state that the Contractor is required to purchase insurance, prior to commencing work, and maintain insurance with the specified minimum limits to indemnify the City during the life of the contract, including any warranty period. Specifically, the City's Insurance Requirements provide:

> **A. Scope of Required Coverage.** The Contractor shall take out and maintain during the life of Contract such insurance in the forms and minimum amounts as specified in this Article and as will protect Contractor and City from the following claims arising out of or resulting from or in connection with the Contractor's operations, undertakings or omissions directly or indirectly related to the Contract, whether by the Contractor or any Subcontractor . . . or by anyone for whose acts any of them may be liable: . . .
> (2) Claims arising out of bodily injury . . .
> . . . .
> **G. City included as Insured on Contractor's Policy -- Endorsements required.** The Contractor shall provide adequate written documentation . . . demonstrating that the City is included as an additional insured along with the Contractor with respect to all of the coverages required in this "Section 2A Insurance Requirements," . . . to include all work performed for the City and specifically including, but not limited to, any liability caused or contributed to by the act, error, or omission of the Contractor, including any related subcontractors, third parties, agents, employees, officers or assigns of any of them. The documentation or endorsement shall specifically include the City as an additional insured

for purposes of Products and Completed Operations. The inclusion of the City as additional insured shall be for coverage only on a primary basis for liability coverage, and no coverage shall contain a policy or other restriction or attempt to provide restricted coverage for the City, whether on an excess, contributory or other basis regardless of any other insurance coverage available to the City.

Dial entered into an agreement with Hawkins to perform the paving work on Amaranth Lane pursuant to the executive order. The agreement listed Hawkins as the "Contractor" and Dial as the "Owner." Hawkins secured an insurance policy through Zurich and provided a certificate of liability insurance identifying the City as an additional insured as evidence that insurance was in place.

Hawkins performed the work on Amaranth Lane and, in October 2007, the City inspected Hawkins' work, determined it was substantially complete, and opened the road to general traffic. Later that month, the City determined the project was complete and met all the required specifications.

In June 2008, the City made a final inspection, provided its final approval, and officially accepted Amaranth Lane. In December, Dial received correspondence from the City's project manager that the construction authorized by the executive order had been completed by Hawkins generally in accordance with the City's standard plans and specifications as required under Dial's executive order agreement.

On May 6, 2009, a motorcycle was involved in an accident on Amaranth Lane, and the passenger, Lycebeth Loy, sustained injuries. Loy filed suit against the City and the engineering firm that developed the plans for Amaranth Lane (the "Loy Lawsuit"). As to the City, Loy generally claimed it was negligent in authorizing defective design plans, signage, and insufficient illumination. She made no allegations relating to the paving performed by Hawkins.

The City notified Hawkins and its insurer, Zurich, as well as Dial and its insurers, Charter Oak and Travelers, of the Loy Lawsuit and tendered its defense to the insurers. All insurers denied coverage. The City ultimately entered into a settlement agreement with Loy, and Loy's lawsuit was dismissed with prejudice.

On May 16, 2013, the City filed its complaint in this action, alleging that each defendant owed a duty to defend and indemnify the City in the Loy Lawsuit. Each defendant moved for summary judgment. The district court of Lancaster County granted all of the motions and dismissed the action. The City timely appeals to this court.

## ASSIGNMENTS OF ERROR

The City assigns that the district court erred in (1) interpreting the executive order as not to require Dial to name the City as an additional insured on its insurance policy, (2) determining that Hawkins satisfied its contractual duty to name the City as an additional insured, and (3) finding that Hawkins is entitled to judgment as a matter of law regarding whether the Loy Lawsuit fell outside the scope of insurance required by the City's standard insurance provisions because it did not arise out of Hawkins' operations in constructing Amaranth Lane.

- 3 -

## STANDARD OF REVIEW

The interpretation of an insurance policy presents a question of law that we decide independently of the trial court. *Federated Service Ins. Co. v. Alliance Const., LLC*, 282 Neb. 638, 805 N.W.2d 468 (2011). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the court granted the judgment and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

*Summary Judgment in Favor of Dial.*

Dial moved for summary judgment on the basis that the contract documents did not require it to name the City as an additional insured. The district court agreed. On appeal, the City asserts that the district court erred in interpreting the executive order as not to require Dial to name the City as an additional insured on its insurance policy. The provision at issue is contained in paragraph 7 of the executive order, which provides:

> 7. The <u>2006 City of Lincoln Standard Specifications for Municipal Construction with the 2006 Supplemental Specifications</u>, and the <u>General Conditions and General Specifications Applying to Private Construction of Public Facilities</u>, are by reference hereby made a part of the conditions of this permit, and Permittee shall comply with the same, including the filing with the City Engineer of the Certificate of Insurance and the executed Performance and Labor and Material Payment Bonds required thereby.

The City claims that the language requiring the Permittee to "comply with the same, . . . including the filing . . . of the Certificate of Insurance" requires that Dial, as Permittee, name the City as an additional insured on its insurance policy as well as requiring that Hawkins do so. We do not agree with the City's interpretation.

Insurance contracts, like other contracts, are construed according to the meaning of the terms that the parties have used. See *Federated Serv. Ins. Co. v. Alliance Const., supra*. When the terms of an insurance contract are clear, we give them their plain and ordinary meaning as a reasonable person in the insured's position would understand them. *Id.*

The executive order requires Dial to file the certificate of insurance and the executed performance and labor and material payment bonds required by the Specifications which incorporate the Insurance Requirements. The Insurance Requirements only require that the Contractor obtain insurance and file the certificate of insurance. The term "Contractor" is consistently used to define Hawkins. The executive order provides that Dial will have the work performed by its own Contractor, and the agreement between Dial and Hawkins lists Hawkins as the "Contractor." Accordingly, only Hawkins, as the Contractor, was required to name the City as an additional insured on its insurance policy, and thus, the district court did not err in granting Dial's motion for summary judgment.

*Summary Judgment in Favor of Hawkins.*

Hawkins moved for summary judgment arguing that it complied with its contractual duty to name the City as an additional insured, but that it was not required to insure the City for the claims made in the Loy Lawsuit. The district court agreed. On appeal, the City claims that the court erred in finding that Hawkins satisfied its contractual duty to name the City as an additional insured and that the Loy Lawsuit did not arise out of Hawkins' operations in constructing Amaranth Lane. We disagree.

With respect to its first argument, the City specifically contends that Hawkins' contractual obligation to name the City as an additional insured required Hawkins to obtain coverage that included defense and indemnification for the City's own acts of negligence, not just the negligence of Hawkins or those working on its behalf. To support its argument, the City relies on *Federated Service Ins. Co. v. Alliance Constr. LLC*, 282 Neb. 638, 805 N.W.2d 468 (2011).

In *Federated*, as part of a subcontract, the subcontractor agreed to make the contractor an additional insured on its insurance policies. The subcontractor's policy included an "Additional Insured by Contract Endorsement," which provided, "'Coverage shall not exceed the terms and conditions that are required by the terms of the written agreement to add any insured, or to procure insurance.'" *Federated*, 282 Neb. at 645, 805 N.W.2d at 475. When an employee of the subcontractor was injured on the jobsite and filed suit, the subcontractor's insurer sought a declaratory judgment that it had no duty to defend or indemnify the contractor in the employee's personal injury action. The trial court granted summary judgment for the insurer, finding that the contractor was not entitled to additional insured coverage under the endorsement because such coverage was limited by the requirements of the subcontract, and the subcontract did not contain express language requiring the subcontractor to insure the contractor's own negligence.

The contractor appealed, and the Supreme Court reversed, concluding that a requirement in the underlying contract that the subcontractor make the contractor an additional insured on the subcontractor's commercial general liability coverage unequivocally showed that the parties intended the subcontractor to insure against the contractor's own negligence. In so holding, the Supreme Court distinguished the language of the subcontract from the language of the contract at issue in *Anderson v. Nashua Corp.*, 251 Neb. 833, 560 N.W.2d 446 (1997). The Supreme Court observed that the contractual provision at issue in *Anderson* was significantly different from the requirement in *Federated* that a subordinate party make a promisee an additional insured on its insurance policy.

The factual background of *Anderson* is similar to that in *Federated*, but in *Anderson*, the contract required the contractor to carry specified coverages that would protect the contractor and property owner "'from all risks and from any claims that may arise out of or pertain to the performance of such work or services . . . .'" *Anderson*, 251 Neb. at 835, 560 N.W.2d at 448 (emphasis omitted). The Supreme Court concluded that this clause did not contain express language requiring the contractor to provide insurance to cover loss caused by the property owner's negligence. The court further concluded that the same clause did not contain clear and unequivocal language that the parties intended the contractor to insure the owner against its own negligence. Thus it implicitly concluded that that coverage for claims that arose out of the contractor's work did not clearly require the contractor to insure against the property owner's own negligence. The

court did not interpret the "arise out of" language to clearly include the property owner's negligence that would not have occurred but for the contractor's work on the property.

Just as in *Federated* where the Supreme Court distinguished *Anderson* based upon the language of the contract, we, too, look to the language of the contract documents to determine the extent of the insurance requirement. Under the Insurance Requirements, Hawkins was required to

> take out and maintain during the life of Contract such insurance in the forms and minimum amounts as specified in this Article and as will protect [Hawkins] and City from the following claims *arising out of or resulting from or in connection with [Hawkins'] operations, undertakings or omissions directly or indirectly related to the Contract, whether by [Hawkins] or any Subcontractor or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable: . . .*

(Emphasis supplied.)

The requirement here is more similar to that in *Anderson* because although the Insurance Requirements mandated that Hawkins name the City as an additional insured, it was limited to claims arising out of Hawkins' work under the executive order. When we look to Loy's operative complaint, the allegations against the City arise out of lighting, road markings, and signage, none of which were part of Hawkins' responsibilities. Therefore, although Hawkins was required to insure the City for its own negligence for claims made against it arising out of Hawkins' work, Hawkins was not required to insure the City for its own negligence arising out of work in which Hawkins was not involved. As in *Anderson*, the phrase "arising out of" applies only to the work Hawkins agreed to perform, which consisted solely of paving Amaranth Lane. Consequently, the district court did not err in finding that Hawkins was entitled to summary judgment.

Finally, the City argues that the district court erred in concluding that no genuine issue of material fact existed regarding whether the Loy Lawsuit fell outside the scope of insurance required by the City's Insurance Requirements because it did not arise out of Hawkins' operations in constructing Amaranth Lane. We find no merit to this argument.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Anderson v. Nashua Corp.*, 251 Neb. 833, 560 N.W.2d 446 (1997). The construction of a contract is a matter of law. *Id*.

As discussed above, the Nebraska Supreme Court has held that, in general, when an agreement requires that a subcontractor name a contractor as an additional insured, the subcontractor is required to insure against the contractor's own negligence. See *Federated Service Ins. Co. v. Alliance Constr. LLC*, 282 Neb. 638, 805 N.W.2d 468 (2011). Under the terms of the Insurance Requirements here, Hawkins was obligated to name the City as an additional insured, but was only required to protect the City from claims "arising out of" Hawkins' "operations, undertakings, or omissions" relating to the executive order. The work that Hawkins performed was paving Amaranth Lane, and the allegations contained in the Loy Lawsuit did not arise out of the paving work. The Loy Lawsuit alleged that the City was negligent with respect to defective design plans, signage, and insufficient illumination. Thus, the allegations contained in the Loy Lawsuit

fell outside the scope of Hawkins' work. Interpreting the phrase "arising out of" more broadly so as to include claims not related to any work Hawkins performed would be inconsistent with Nebraska law, which requires that contract language be read as a whole and given a reasonable interpretation, not an interpretation that would produce absurd results. See *State v. Peterson*, 280 Neb. 641, 788 N.W.2d 560 (2010). We therefore find no error in the district court's conclusion that no genuine issue of material fact existed with respect to this issue, and that Hawkins was entitled to judgment as a matter of law.

CONCLUSION

We find that the district court did not err in entering summary judgment in favor of Dial and Hawkins. We therefore affirm.

AFFIRMED.